JAMES E. HOUCK and DOROTHY A. HOUCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Houck v. Commissioner
Docket No. 396-80.
United States Tax Court
T.C. Memo 1981-682; 1981 Tax Ct. Memo LEXIS 61; 42 T.C.M. (CCH) 1762; T.C.M. (RIA) 81682; November 25, 1981. *61 James B. Panther, for the petitioners. Kevin M. Bagley, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $ 9,684 in petitioners' Federal income tax for 1976 and an addition to tax in the amount of $ 484 under section 6653(a). [1] In an amended answer, respondent alleges that the amount of the deficiency is $ 9,857 and that the addition to tax is $ 493. [2] The issues for decision are: (1) Whether petitioners had unreported taxable income in 1976 and, if so, in what amount; and (2) whether any underpayment of the tax was due to negligence or intentional disregard of the rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT
*62 Petitioners James E. Houck (hereinafter petitioner) and Dorothy A. Houck (Dorothy) resided in Vista, California, at the time their petition was filed. Petitioners were married on January 23, 1967, but in the early part of 1976 they separated and obtained a final decree of divorce in September 1976. When they separated, Dorothy and their two children moved from the family residence and for a time thereafter maintained a separate residence. Petitioner was required, pursuant to the temporary and final divorce decree, to pay $ 125 per month child support for each of the couple's two children, beginning March 20, 1976. Dorothy and petitioner were later reconciled, and they remarried on December 31, 1976. Petitioner owned and operated a business known as Desert Sport Campers Service (Desert Sport) which serviced and repaired recreational vehicles. Petitioner worked primarily as a mechanic. Betty Pace did the bookkeeping for the business from late 1975 through October 1976; after October 1976, Dorothy performed the bookkeeping work. Desert Sport's financial matters were left almost entirely to the bookkeepers, and petitioner had little involvement in its financial activities. *63 The bookkeepers maintained sales receipt books, made payments on accounts, and made bank deposits of funds collected from customers. Prior to their deposit, the funds were kept in a cash drawer at the business. The bookkeepers did not verify that the deposit slips always matched the total receipts taken in from the previous day, nor did they systematically record daily receipts in a log or other ledger. Desert Sport's accounting books reveal that, on at least four separate occasions in 1976, sums of money were withdrawn from the business, totaling $ 2,066.79. Petitioners and Desert Sport maintained numerous separate bank accounts. As of January 1, 1976, petitioners' bank balances totaled $ 5,061; as of December 31, 1976, they totaled $ 2,397. During 1976, petitioners deposited a total of $ 103,775 to their various bank accounts; of these deposits, $ 2,351 represented interaccount transfers and redeposits. One of these deposits is a $ 75 Federal income tax refund of an overpayment in 1975. Petitioners received no gifts, inheritances, or bequests in 1976. During that year, they made cash expenditures of $ 2,212 of undeposited cash. On their joint Federal income tax returns *64 for 1973, 1974 and 1975, petitioners reported income and a loss as follows: Year
Income (loss)
1973
$ 2,769 1974
(2,368)
1975
3,637 Although the separation agreement, which was incorporated in petitioners' interlocutory divorce decree of April 7, 1976, listed numerous items of property which were to be divided between them, the decree contained no reference to any cash on hand. On their 1976 joint Federal income tax return, petitioners reported $ 66,410 in gross receipts from Desert Sport, $ 4,617 in wages, and $ 55 in interest income, totaling $ 71,082 in gross receipts. They incurred and paid the following in 1976: $ 33,526 as business expenses, $ 27,088 as cost of goods sold, and $ 20,370 as inventory acquisition, for a total cost of $ 80,984. OPINION Relying on the bank deposits method of proof, respondent calculated petitioners' unexplained bank deposits as follows: Total Deposits
$ 103,775.00
Less: interaccount transfers
2,351.00
1975 income tax refund
75.00
Net Deposits
$ 101,349.00
Add: Undeposited cash
expenditures
$ 2,212.00
Less: Gross Receipts
reported
71,082.00
Adjustment to Net Deposits
$ 68,870.00
Unexplained Deposits
$ 32,479.00
*65 On the basis of those unexplained deposits, respondent determined that petitioners omitted income in the amount of $ 32,479 from their income tax return for 1976. Though not conclusive, bank deposits are prima facie evidence of income and petitioners have the burden of proving that respondent erred in his determination. Rule 142(a); , affd. (6th Cir. (1977); , revg. on other grounds a Memorandum Opinion of this Court. Petitioners have not sustained their burden and we hold for respondent. Petitioners do not question the fact that bank deposits in excess of their recorded business receipts were made but contend that the unexplained deposits came from a "cash hoard" of savings. These funds, they allege, were stored in a safe in the attic and totaled over $ 20,000 in 1976. Petitioner testified that this money was accumulated over a period of approximately 15 years to insure against any calamity and was used in 1976 when his family and business were disrupted by the divorce. Petitioners argue that the unexplained *66 bank deposits derive from savings of tax-paid dollars, and thus do not constitute income. We do not find this cash hoard testimony credible. Petitioners admit that they received no gifts or inheritances which were included in the deposits, and respondent's calculations eliminate all identified interaccount transfers. We are not satisfied that petitioners had sufficient income in years prior to 1976 to permit the accumulation. Petitioner's testimony was vague as to exactly when the hoard was accumulated. No evidence was offered to show the amount of their income in any prior year except in 1973, 1974, and 1975.In 1973, they reported adjusted gross income of $ 2,769 and in 1974 they reported a loss of $ 2,368. In 1975, they reported adjusted gross income of $ 3,637 ($ 3,568 from Desert Sport and $ 69 as interest income). We think it incredible that a family of four could live on these amounts of income and add funds to a cash hoard. In 1976, when petitioner and Dorothy were being divorced, petitioner did not disclose any cash hoard so that it could be taken into account in the property settlement. Moreover, at no time during the course of several conversations with the investigating *67 revenue agents did petitioner mention the cash hoard. We are left with the conviction that the cash hoard theory is an afterthought designed only to explain unreported income. We observe, also, that Dorothy's testimony with respect to the alleged cash hoard did little to corroborate petitioner's testimony.She testified that she inherited a safe from her grandfather some time after she and petitioner were married on January 23, 1967. She also stated that the safe is located in the attic of their home, where she has never gone, and that she did not know the safe's contents. She testified that petitioner kept money in the safe but admitted that she never saw her husband put any money in the safe or take any out of it. Had she actually thought petitioner had a substantial cash hoard in the safe, we think she would have raised the issue during the divorce proceedings. As some confirmation that a substantial cash hoard did not exist, the amount of petitioner's unexplained cash withdrawal in 1976, of a total of $ 2,066.79, from Desert Sport for personal use coincides roughly with the child support of $ 250 per month payable by petitioner under the divorce decree from March to November *68 1976. The inference is that the withdrawal was needed for that purpose. Certainly, at a minimum, the withdrawal of this sum from the business for personal use is an odd occurrence if petitioner was, in fact, at that time transferring funds from the cash hoard to the business. Finally, petitioner has given no convincing explanation as to why he, a businessman, would keep a cash reserve of some $ 20,000 in a safe rather than in a savings account where it would draw interest.
Petitioners emphasize that the income and deduction entries in the Desert Sport books coincide with the entries on petitioners' income tax return, that the books were orderly, and that respondent has produced only circumstantial evidence showing unreported income. To the extent the records are complete, they may be accurate, but they do not explain why petitioners deposited larger amounts in their bank accounts than the gross receipts reflected by the books of account. Regardless of how perfectly the books were kept, respondent was entitled to test their accuracy by making a bank deposits analysis. Books of account may be "more consistent than truthful." . *69 See , affg. a Memorandum Opinion of this Court. Since petitioner's books failed that analysis, respondent was entitled to make the disputed determination without producing direct evidence that the unexplained deposits were taxable income. Petitioners have not shown by evidence, direct or indirect, any error in respondent's determination, and we sustain the determined deficiency. Respondent has not, however, shown that the amount of the tax should be increased over that stated in the notice of deficiency. As he alleged the increase in his amended answer, the bears the burden of proving its correctness. Rule 142(a). The figures he produced show unexplained deposits of $ 32,479, a figure different from both those stated in the notice of deficiency ($ 32,317) and in the amended answer ($ 32,731). We are not satisfied, however, from the evidence presented that the deposits in excess of the amounts determined in the notice of deficiency were taxable income. We hold that respondent has not sustained his burden of proof on this increase. Turning to the second issue, respondent determined that petitioners *70 were subject to an addition to tax under section 6653(a) [3] for negligent or intentional disregard of rules and regulations. Petitioners presented no evidence to counter this determination. [4] Apart from the cash hoard theory, which we have rejected, petitioners offered no explanation of the discrepancy between their bank deposits and their reported gross income. Accordingly, we hold that petitioners are liable for an addition to tax under section 6653(a). In light of our holding of the amount of the deficiency, this addition to tax will be $ 484 as set forth in the notice of deficiency. Decision will be entered under Rule *71 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. Unless otherwise indicated, all references to "Rules" are to the Tax Court Rules of Practice and Procedure. ↩
2. The notice of deficiency also disallows a medical deduction of $ 423, which is not in issue in this case. Other adjustments to income are set forth in the notice.↩
3. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment * * * of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. ↩
4. The fact that a paid preparer actually filled out the form does not, of course, alter petitioners' obligation to provide accurate information.↩